ROSENBAUM BROS., Appellees, v. A. A. HORTON, Appellant.

1. **Partnership:** NOTICE OF DISSOLUTION: RIGHTS OF CREDITORS. K., the successor of a copartnership engaged in the banking business, of which H. was a member, having received several car loads of flax and oats as security for a claim due the bank, shipped the same to the plaintiff firm, and drew upon it for the value thereof. The transaction was an unusual one with the bank, but was necessary as a means of security, and a letter of advice written by K. to the plaintiffs, and signed by him as cashier, stated that the property was taken for a debt. No notice of the retirement of H. from the bank was published in the papers, nor was any notice sent to the plaintiff, but no drafts had ever been drawn on the plaintiff by the bank, or by either of its proprietors, while H. was a member of the firm. After K. succeeded to the ownership of the bank he conducted its business under the same names that had been used by the partnership, and in correspondence with the plaintiff used stationery that had been prepared for his predecessors, and upon which their names appeared, although over those names was stamped K.'s name as cashier. *Held,* in an action by the plaintiffs to recover the amount of an overdraft on account of said shipments, that the unusual character of the transaction, and the stamping of K.'s name over that of the former proprietors on the stationery, was not sufficient to charge the plaintiffs with notice of the change of the ownership of the bank, and that H. was liable to the plaintiff as one of the proprietors thereof.

2. ———: ———: INSTRUCTIONS TO JURY. The fact that the instructions in such case excluded from the consideration of the jury circumstances which should have caused a reasonably prudent person to make investigation which would have disclosed the facts in regard to the ownership of the bank, *held,* not to be prejudicial, as there were no circumstances of that kind shown by the evidence.

3. **Practice in Supreme Court:** AMENDED ABSTRACT: DELAY IN FILING. An amended abstract, filed by appellee, will not be stricken from the files, because of its not having been filed within the time required by the rules of the supreme court, when no prejudice has resulted to the appellant.

*Appeal from Calhoun District Court.*—HON. GEORGE W. PAINE, Judge.

SATURDAY, JANUARY 20, 1894.

ACTION at law to recover an amount due the plaintiff on account of money advanced on drafts for which the defendants, the Pomeroy Exchange Bank, F. A. Kenyon, F. L. Kenyon and A. A. Horton are alleged to be liable. F. A. Kenyon did not enter an appearance, and a default was entered against him. The defendants F. L. Kenyon and A. A. Horton filed separate answers, and there was a trial by jury, which resulted in a verdict against both F. L. Kenyon and Horton for seven hundred and nineteen dollars and ninety cents. Judgment was rendered against them for that amount and costs. The defendant Horton appeals.—*Affirmed.*

*R. M. Wright,* for appellant.

*Cole, McVey & Cheshire,* for appellees.

ROBINSON, J.—For some years before August, 1890, a copartnership known as Rosenbaum Brothers was engaged in the commission business at Chicago. On the first day of that month the copartners and some of their employees organized a corporation under the same name, which succeeded to the business of the firm, and is the plaintiff. During several years prior to April, 1888, the defendant Horton was engaged in dealing in lumber, coal, grains and hay at Pomeroy, and at times shipped grain and hay to Rosenbaum Brothers. In the month last named Horton and one R. C. Brownell, as

copartners under the name of Brownell & Horton, purchased of Gould & Moody a banking business which had been carried on in the name of the Pomeroy Exchange Bank. That name was retained by Brownell & Horton, who carried on the business under it, and in their own names, until the latter part of the year, when Brownell sold his interest in, the bank to the defendant F. L. Kenyon. He and Horton became copartners under the name of Horton & Company, and afterwards under the name of Horton & Kenyon, and carried on the banking business in those names and in the name of the Pomeroy Exchange Bank, until the first day of September, 1890. On that date Horton sold his interest in the bank to the defendant F. A. Kenyon, who had, since the first of the year, been employed by the firm to assist in its business. The agreement of sale was made in writing, and provided that no change in the firm name should be made until the first day of the next month. At about the same time F. A. Kenyon purchased the interest of his father, F. L. Kenyon, and became the sole owner of the bank. Prior to the first day of September, 1890, no drafts were drawn on the plaintiff by the Pomeroy Exchange Bank nor by its owners. During the month of December, F. A. Kenyon shipped to the plaintiff several car loads of flax seed and oats, and drew on it drafts to the amount of three thousand dollars, which were paid. The amount of the drafts exceeded the proceeds of the shipments by about seven hundred dollars, and this action was brought to recover that excess.

I. It appears, without material conflict in the evidence, that Horton was not interested in the bank when the drafts in question were drawn, and

1. PARTNERSHIP: notice of dissolution: rights of creditors.

that, as between himself and F. A. Kenyon, he was not in any manner liable for their payment. He insists that the court

erred in not directing a verdict in his favor. The plaintiff contends, however, that it paid the drafts under the belief that he was one of the owners of the bank, without any knowledge that he had transferred his interest in it, and without any notice which would charge it with such knowledge. He admits that he did not give any newspaper notice of the transfer of his interest, but contends that he informed persons in Pomeroy of the fact; that he caused to be printed and circulated business cards, which gave notice of it; that the transaction in which the drafts were drawn was not within the scope of the business the bank had carried on while he was connected with it; and that the plaintiff knew from the character of the transaction, the correspondence it had with F. A. Kenyon, the stationery he used, and other sources of information, of facts which charged it with knowledge of the change in the ownership of the bank.

There is some claim made by the appellee that the firm of Horton & Kenyon was engaged in the business of dealing regularly in grain. Their books show a grain account, and that money of the bank was paid out for grain. But we are satisfied that Horton alone was concerned in the grain business, and that the money paid for grain was for his benefit. The flax seed and oats shipped to the plaintiff were obtained by the bank of Smith & Son in the following manner: They owed a machine company about seven hundred dollars, and the bank about nine hundred dollars. The bank had guaranteed the payment of the claim of the machine company, and the flax seed and oats were taken to apply in payment of the two claims. The transaction was not a usual one with the bank, but was necessary for it to secure its claim and the claim of the machine company. It does not require any argument to show, that the bank was authorized to secure itself against loss by taking the property in question, and that it had

the right to ship it to Chicago for sale, even though such a proceeding was not within the ordinary scope of its business, and was unusual. If it be claimed that the transaction was so unusual that the plaintiff, in the exercise of ordinary caution, should have inquired in regard to it, the answer is that, if such inquiry had been made, it would have disclosed the fact that the flax seed and oats were properly taken in the transaction of the ordinary business of the bank. In fact, the letter of advice in regard to the shipments was signed by F. A. Kenyon as cashier, and stated that the property shipped, and to be shipped, was taken on account of a debt.

F. A. Kenyon, after he acquired the ownership of the bank, conducted its business under the names Pomeroy Exchange Bank and Horton & Kenyon, and, in his correspondence with the plaintiff, used stationery prepared for his predecessors, on which those names were printed. It is true that over those names were stamped the words, "F. A. Kenyon, Cashier." One of the drafts was signed by him, without the addition of the word "cashier," and at least one of the shipments was made in his own name, but he informed the plaintiff that all shipments were for the bank, and that he intended to sign the drafts as cashier; and, relying upon those statements, the plaintiff kept its account in the name of Pomeroy Exchange Bank. Had the plaintiff inquired in regard to the stamping on the letter heads, it would have learned that F. A. Kenyon was in fact the cashier of the bank; and further inquiry would have developed the fact that the drafts and shipments were all on account of the bank. There was nothing in any of the circumstances on which Horton relies to charge the plaintiff with notice of the change in the ownership of the bank which should be treated as having that effect. He does not claim that he sent any notice of the change to the

plaintiff, but testified that he notified an agent of the plaintiff of it. His testimony in that regard is contradicted by the agent, and the jury found specially that he did not give any notice to the agent, and that none was published or sent to the plaintiff. That finding has so much support in the evidence that we can not disturb it. The fact appears to be that Horton and others were planning to organize a new bank to succeed F. A. Kenyon on the first day of January, 1891, of which Horton was to be president; and it is probable that, for that reason, he failed to give the notice of his retirement from the bank, which ordinary prudence and business usage would have dictated. However that may be, we find nothing in the record which, in view of the finding of the jury, can be regarded as evidence that the plaintiff had either actual or constructive notice of the change in the bank.

II. The appellant objects to certain paragraphs of the charge to the jury on the ground that they adopt too rigid a rule in regard to such notice, excluding from the consideration of the jury circumstances which should have caused a reasonably prudent person to make an investigation which would have disclosed the facts in regard to the ownership of the bank. But, if it be conceded that the portions of the charge so objected to are not accurate as general statements of the law, we think they could not have been prejudiced in this case, for the reason that there were no circumstances of that kind shown by the evidence.

2. ——: ——:
instructions
to jury.

III. The appellant has discussed at length numerous questions, which we do not find it necessary to mention in detail. Some are disposed of by what we have already said, others are immaterial to a decision of the case, and others are not founded upon proper exceptions.

3. PRACTICE in
supreme court:
amended ab-
stract: delay
in filing.

A motion to strike an additional abstract because not served and filed within the time required by the rule in regard to such abstracts will be overruled, for the reason that no prejudice to the appellant from the delay is shown.

A motion of the appellee to dismiss the appeal in view of the conclusion reached on the merits we find unnecessary to determine. It is sufficient to say that we have examined the entire record with that care which the importance of the questions involved demands, and find no error prejudicial to the appellant.

The judgment of the district court is AFFIRMED.