### TRUSTEES OF CHARLOTTE TOWNSHIP v. PIEDMONT REALTY CO.

(Filed December 15, 1903).

1. CONTRACTS — *Ultra Vires* — *Corporations* — *Bridges* — *Consideration*—*Public Policy.*

   A promise by a land company to pay a portion of the expense of a public improvement is not void as against public policy, and if it has a peculiar interest in the matter the contract is not void for the want of a consideration.

2. CORPORATIONS—*Contracts*—*Ultra Vires*—*Estoppel.*
   Where a corporation is a party to an executed contract and has received the benefits therefrom, it is estopped from pleading that the contract was *ultra vires.*

ACTION by the Board of Trustees of Charlotte Township against the Piedmont Realty Company, heard by *Judge W. H. Neal,* at July Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appeals.

*Burwell & Cansler,* for the plaintiff.
*Jones & Tillett,* for the defendant.

CONNOR, J. The plaintiff alleged its corporate existence and the power to establish and maintain the public highways and bridges in Charlotte Township, Mecklenburg County,

and to do all things necessary and incidental to the exercise of such power; that the defendant was a corporation with power and authority to buy, sell, hold and deal in suburban and other real estate in the county aforesaid.

3. That prior to the 19th day of July, 1901, the defendant was and is still the owner of a large tract of land just east of the city of Charlotte, which is divided up into building lots and thrown upon the market to all persons wishing to invest therein for the purpose of erecting thereon suburban residences, the value of which, as such, would be materially enhanced by the extension through it of the city street car line.

4. That it was necessary to erect over Sugar Creek, just beyond the eastern limit of Seventh Street, on one of the public highways in Charlotte Township, a bridge of sufficient strength and capacity to permit the street cars to cross the same, in order that said street car line might be extended through the suburban property of the defendant hereinbefore described, and for that purpose the defendant, by its duly authorized agents, urged the plaintiff to erect and construct across said creek at said point a strong and substantial bridge, in order that its suburban property might be materially benefited and enhanced in value thereby, and offered to pay as a consideration therefor one-fourth of the cost of erecting said bridge if the plaintiff would undertake the same and defray the balance of the cost thereof.

5. That during the negotiations between the plaintiff and the defendant concerning the erection of said bridge the defendant contracted to sell to divers parties a number of building lots from the property aforesaid by representing to said persons that said bridge would be erected and the street car line extended through said property, and urged upon plaintiff the fact that it had made such contracts and representations as an additional reason why said bridge should be erected by the plaintiff as soon as possible.

6. That thereupon the plaintiff agreed to erect and construct said bridge, in consideration of which the defendant agreed to pay to plaintiff one-fourth of the cost thereof, when the same should be completed, whereupon the plaintiff undertook to erect, and did erect, across said Sugar Creek, upon said highway, in accordance with said agreement, a large and substantial bridge of sufficient capacity to permit said street car line to cross the same and to accommodate all public travel, at a total cost to it of $6,178.68, on account of which the defendant's property was materially enhanced in value, in the manner and for the reasons hereinbefore stated.

7. That the cost of said bridge was greatly increased at the defendant's request and in order to make it of sufficient strength and durability to permit the electric street railway and its cars to cross it in the extension of said railway line to and through the suburban property of defendant, as aforesaid.

8. That after the completion of the erection of said bridge by the plaintiff it duly demanded of the defendant, on the 19th day of July, 1902, the payment to it of the sum of $1,544.67, being one-fourth of the cost of said bridge, which the defendant had theretofore agreed to pay, but which it refused, and still refuses, to pay.

9. That on account of the matters and things hereinbefore stated the defendant is now justly indebted to the plaintiff in the sum of $1,544.67, with 6 per cent. interest thereon from the 19th day of July, 1902, until paid.

Wherefore the plaintiff demands judgment against the defendant for the sum of $1,544.67 and costs.

The defendant demurring to the complaint herein filed for grounds of demurrer, says:

1. That the complaint does not state facts sufficient to constitute a cause of action in this:

(1). That it appears from the complaint that the contract

alleged to have been made by the defendant company was one in its nature *ultra vires* and beyond the power of the corporation to make, in that it was a contract to expend money in aid of the construction of a public bridge on a public highway that was not on any part of the land belonging to the defendant company; and further, that it was a contract made with public officers, acting in derogation of their duty, and was against the policy of the law.

(2). That it appears from the complaint that the contract alleged to have been made by the defendant company is one which was beyond its power to make, and, moreover, was against the policy of the law in this, that it being the duty of said officers to erect on the highway of the said township all bridges for public use, it became their duty to erect this bridge at public expense if the same was necessary for the public use, and the contract being one to erect a bridge not necessary for the public use generally, but for the benefit of a private land owner, was unauthorized by law and against its policy.

The demurrer is based upon two propositions: First, that the contract made by the plaintiff whereby it agreed to construct a stronger and more expensive bridge, to be paid for out of the public funds, was *ultra vires;* and, second, that said contract was against public policy. It was admitted by defendant's counsel on the argument of this case that the demurrer should be overruled unless the Court should not hold that by proper interpretation of the complaint in this action it was alleged therein that the contract sued upon contemplated an expenditure of public funds for private uses. It was admitted that the Court had no right to control the plaintiff in the expenditure of the public funds so long as these funds were being expended for public purposes, but it was urged that the contract set out in the complaint clearly showed that it contemplated an expenditure of public funds in excess

of what the plaintiff deemed necessary for public needs, and that this appearing from the face of the complaint, the Court should sustain the demurrer, because in the first place it was a contract to expend the funds of a municipal corporation for private uses, and in the second place such contract was void as being against public policy.

Treating the complaint as alleging a contract to expend public funds for private uses, it was contended that the State Constitution forbade such a contract unless it was submitted to a vote of the people, and that in such sense the contract was *ultra vires* of the plaintiff corporation; and again, that a contract contemplating the expenditure of the funds of a municipal corporation for private enterprises was against public policy, and therefore void.

These principles are fundamental. A very different question, however, is presented by the complaint and demurrer in this case. It is admitted by the demurrer that public necessity required the building of the bridge over the creek crossed by a public highway of said township. The defendant urged not the building of the bridge, but that it should be strong and substantial in order that the property of the defendant might be benefited. It was for *this* that the defendant promised to pay one-fourth of the whole cost. It is also admitted that the cost of said bridge was greatly increased at the defendant's request in order to make it of sufficient size and durability to permit the street railway and its cars to cross it in extension of said railway to and through suburban property of the defendant. It being admitted that the bridge was necessary, the strength, durability, width, etc., were questions entirely within the province of the Board of Trustees to decide. This Court could not have undertaken to pass upon or control the exercise of their judgment in that respect.

In *Broadnax v. Groom*, 64 N. C., 244, *Pearson, C. J.,* says: "Who is to decide what are the necessary expenses of a

county? The County Commissioners, to whom are confided the trust of regulating all county matters. 'Repairing and building bridges' is a part of the necessary expenses of a ·county, as much so as keeping the roads in order, or making new roads; so the case before us is within the power of the County Commissioners. How can this Court undertake to ·control its exercise? Can we say such a bridge does not need repairs; or that in building a new bridge near the site of an old bridge it should be erected as heretofore upon posts, so as to be cheap, but warranted to last for some years; or that it is better policy to locate it a mile or so above, where the banks are .good abutments, and to have stone pillars, at a heavier outlay at the start, but such as will insure permanence and be cheaper in the long run? * * * This Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the government, or upon the county .authorities." It certainly was not violating any constitutional or statutory restriction upon the power of the board to build the bridge of such strength and durability as the Commissioners in their judgment thought proper. That being conceded, we are at a loss to perceive how it can be contrary to public policy to enter into a contract with the defendant by which it agreed to share a part of the burden and cost of building the bridge. It does not appear that the cost of the bridge was enhanced to the extent of one-fourth at the request ·or for the benefit of the defendant. *Judge Dillon*, in his work on Municipal Corporations, sec. —, says: "A promise by individuals to pay a portion of the expense of public improvements does not fall within this principle, and such promise is not void as being against public policy; and if the promisors have a peculiar and local interest in the matter their promise is not void for want of consideration, and may be ·enforced against them."

The question seems to have been presented in *Townsend v. Hoile,* 20 Conn., 1, cited in the plaintiff's brief. The Court, in discussing the question, says: "The defendants are not only benefited in common with other citizens, but obviously they had a peculiar and local interest, and well might obligate themselves to indemnify the city for assuming the burdens and responsibilities of a new public highway. * * * We must not be considered as assenting to the proposition that a promise by individuals to pay a part of the expense of public improvements ordered by public authority is of course illegal and void. We think the amount of a public burden or the cost to the public of an improvement may properly enough enter into the question of expediency or necessity. A canal, a railroad, a bridge, a new street, a public square or a sewer, is called for. If made in one way, or in one place, it will be much better for the public, though more expensive; but individuals, especially benefited, stand ready by giving their land, their money or their labor to meet the extra expense. Will these promises be void, as being without consideration or against public policy? We think not." This language fully meets our approval, and would seem to be decisive of this case. Of course if there was any improper or corrupt motive controlling the Commissioners in a public work of this character, or if it were manifest that its real purpose was to promote the private interest of the defendant and not the public necessity, a very different question would be presented. But the complaint negatives any such suggestion, and the demurrer admits the facts to be as stated in the complaint. If the County Commissioners, finding it necessary to open a public road from one point to another, should, at the request and in consideration of the payment by a land owner of the additional cost, change its course, keeping in view always the convenience of the public, we cannot see how such contract would be open to the criticism of being against

public policy. We think such a contract would come within the principle laid down in the cases cited.

This Court, in *Stratford v. Greensboro*, 124 N. C., 131, says: "There can be no objection to the contributing of an individual to the expense of laying out or altering a street, nor will such an act prove that the property was taken for the accommodation of private individuals and not for public use. If in point of fact the public necessity and convenience require the improvement of a street or the opening of one, it can make nó difference who pays the damages of condemnation. It might be that a party contributing a part or the whole of the assessed damages in the condemnation of land for a public street, when the public necessity requires such street, might have lands adjacent which might be improved by the opening of the street, and surely if nothing else appeared it would not be either immoral or illegal for him to pay the damages growing out of the condemnation proceedings." The opinion cites *Parks v. Boston*, 8 Pick. (Mass.), 218 (19 Am. Dec., 322), in which it is said: "If the public necessity and convenience require the alteration, it is immaterial at whose expense it was made. A donation or contribution from individuals to relieve the burden upon the city has no tendency to prove that the enlargement of the street was not a public benefit. A street or highway is not the less public because it accommodates some individuals more than others."

There is no suggestion that the public credit has been pledged to build this bridge. So far as appears from the record the bridge has been paid for. Surely, as was well suggested by the plaintiff's brief, if the defendant will perform its part of the contract and replace the money thus expended at its request and upon its promise, there will be no injury to the public, assuming that the cost of the bridge was enhanced for the defendant's benefit. It would lead to a singular

TRUSTEES *v.* REALTY CO.

result if the defendant could induce the plaintiff to expend public money for its benefit, and then by refusing to repay the money successfully justify its refusal upon the ground that the public treasury was depleted by the plaintiff. It would seem rather that such depletion is the result of the defendant's conduct rather than the plaintiff's.

If the contract set out in the complaint was *ultra vires,* it would seem that after it is executed and the defendant has received the benefit thereof, it would be estopped from setting up this defense. The defendant's counsel admitted that if this was an ordinary case of *ultra vires,* where a private corporation had entered into a contract which was not within the express powers granted to it, then a receipt of benefits would estop the corporation; but it was contended that there could be no estoppel where the contract in question was made with a municipal corporation in direct violation of the constitutional restriction or in violation of the law of public policy. The authorities cited fully sustain the position of the plaintiff that if the corporation has performed the contract on its side the other contracting party cannot plead that it was *ultra vires.* We can see no reason in law or in good morals why the defendant should not perform the contract which it admits was made with the plaintiff, which has been performed by the plaintiff, the full benefit of which the defendant has received. We think his Honor correctly overruled the demurrer. The judgment must be

Affirmed.

WALKER, J., did not sit on the hearing of this case.