(44 Misc. Rep. 46.)

### GAUSE v. COMMONWEALTH TRUST CO. OF NEW YORK.

(Supreme Court, Special Term, New York County.   June, 1904.)

1. CONTRACT—ACTION FOR BREACH—SUFFICIENCY OF COMPLAINT.
   A complaint alleged that plaintiff owned stocks and bonds of a shipbuilding company, and that he gave a corporation organized under the banking law a right to sell the same within one year, according to its discretion, such corporation agreeing that plaintiff should receive for the stock a named sum of money; that thereafter plaintiff placed the stock at the disposal of the banking company, and repeatedly tendered it to such company, but the year passed without payment of the amount agreed upon. *Held* to state a cause of action.

2. CORPORATIONS—ESTOPPEL.
   Where a corporation enters into an ultra vires contract, it is estopped from pleading such defense in an action for breach of the contract, where it has been fully performed by the plaintiff.

3. CONTRACT—PUBLIC POLICY.
   A contract whereby a banking institution agreed to sell plaintiff's stock within a year for a certain sum, and pay such sum to plaintiff, is not void as against public policy.

4. SAME—VALIDITY—BANKING CORPORATION.
   A contract whereby a banking corporation organized under the banking law agreed to sell for plaintiff certain corporate stock within one year, for a sum named, is not in violation of Banking Law (Laws 1892, p. 1911, c. 689) § 159, prohibiting such a corporation from holding stock in excess of 10 per cent. of its capital; the contract not showing that the stock was intended by the parties to constitute part of the capital of the bank, or that it was intending, or that plaintiff knew it was intending, to invest any trust funds in the stock so to be sold.

5. SAME—DEFENSES.
   In an action against a banking corporation for failure to sell certain corporate stock of plaintiff within a year for a fixed sum, which sum was to be paid to plaintiff, a defense that plaintiff was a stockholder in a third corporation; that by false representations he sold that corporation to the company whose stock the bank had agreed to sell, receiving part payment in securities of that company; and that, although he covenanted that the corporation which he sold should be free from debts and liens, it was not so free—was insufficient to show that the stock which he placed at the disposal of the defendant was fraudulently acquired, and that he could not make a marketable title thereto.

**6. SAME—FRAUD—TITLE ACQUIRED.**

Where plaintiff acquired certain stock in fraud of his vendor, because of false representations made in the transaction in which the stock was acquired, though it was good ground for rescinding such transaction, plaintiff's title to the stock was good, so far as a third party who had contracted for the same was concerned.

**7. SAME—DEFENSES—PLEADING.**

Where plaintiff sues a banking corporation for failure to sell certain shares of stock for him at a fixed price within a year, as agreed, a defense alleging that plaintiff knowingly falsely represented that the stock was fully paid and not assessable, and that, on the contrary, the holder was liable for further assessments, by reason of allegations in the "third and fourth defenses of the defendant," is bad, where the examination of those defenses contains nothing to show that the stocks were not fully paid, and do not plead the statute of the state of the domicile of the corporation, showing that such stock was subject to assessment.

**8. SAME—COUNTERCLAIM—PLEADING.**

In an action against a banking corporation for breach of a contract to sell stock of a corporation for plaintiff within a year at a fixed sum, the counterclaim alleged a contract between the plaintiff and third parties for the sale of certain other corporate stock, and alleged that, in order to induce defendant to advance plaintiff the cash part of the consideration, plaintiff made certain false representations to defendant, and that, in reliance thereon, it paid out the cash, and that the money was "wholly lost to the defendant." *Held*, that the counterclaim was demurrable, as no facts were alleged from which it could reasonably be inferred that the money was wholly lost.

Action by Harry T. Gause against the Commonwealth Trust Company of New York. Demurrers to complaint sustained.

Taylor, Anderson & Seymour (Howard A. Taylor, of counsel), for plaintiff.

Francis S. Hutchins (C. La Rue Munson, of counsel), for defendant.

LEVENTRITT, J. This case presents for consideration four demurrers to as many separate defenses in the answer, and a fifth demurrer to a counterclaim.

The complaint alleges substantially the following facts: On August 28, 1902, the plaintiff, who was then the owner of certain stocks and bonds of the United States Shipbuilding Company, entered into an agreement in writing with the defendant whereby he agreed to, and did, put the stocks and bonds at the disposal of the defendant, giving it the exclusive right to sell them according to its judgment and discretion. The defendant agreed to undertake the sale, covenanting that it would be accomplished on or before August 25, 1903, and that the plaintiff would receive by that date for the stocks and bonds a stated price, which, after deducting ordinary brokerage expenses, would amount to $404,630. The plaintiff at once placed the securities at the disposal of the defendant, and refrained, either personally or through agents, from making any effort to sell them. The securities have always been, and now are, at the defendant's disposal, held at its request and subject to its order. The plaintiff

is ready and willing to turn them over to the defendant, and has made repeated tender. August 25, 1903, having come to pass, prior to the commencement of this action, without payment by the defendant, the plaintiff lays his damage in the sum of $404,630, for which he prays recovery.

To this complaint the defendant interposes five separate defenses and a counterclaim. The plaintiff demurs to all, with the exception of the defense pleading lack of authority in those assuming to execute the contract on behalf of the defendant. Before taking up the defenses and the counterclaim, it is necessary briefly to examine the complaint, as the defendant invokes the rule that a demurrer searches the record to condemn the first defective pleading. Baxter v. Mc-Donnell, 154 N. Y. 432, 436, 48 N. E. 816. The defect charged is that the complaint, in assigning the breach, does not negative the covenant declared on. As I read the complaint, however, the defect is nonexistent. The covenant is not a mere undertaking to sell certain securities, and that a sale would be accomplished by a certain time, netting a certain amount, in which event an allegation of breach that this certain amount had not been paid would not follow or be governed by the covenant. Brown v. Stebbins, 4 Hill, 154. The covenant, as I take it, is that on or before a certain date the plaintiff should receive a certain sum of money, and the assigned breach is that that date has passed, and the money has not been paid. I am of the opinion that the complaint states a cause of action.

The first defense is that the agreement or contract sued on was ultra vires; that the defendant, a domestic corporation organized under the banking law (being chapter 37 of the General Laws), had no right or power to enter into the contract set out in the complaint; and that any acts done or benefits claimed by the plaintiff are ineffectual and not binding on the defendant. To this defense the plaintiff demurs for insufficiency. I am of the opinion that the demurrer is well taken. The cautiously pleaded contract does not, so far as disclosed, appear to be illegal, immoral, or against public policy; and, though it be ultra vires in the strict sense of that term (that is to say, beyond the enumerated or reasonably implied powers of the corporation), the latter is estopped from pleading the defense, because the contract has been fully executed by the plaintiff. Whatever may be the rule in other jurisdictions, it must be taken as settled in this state, through a long line of decisions, from Bissell v. M. S. & N. I. R. R. Cos., 22 N. Y. 258, to Vought v. Eastern Building & Loan Ass'n of Syracuse, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761, that "while a contract remains unexecuted upon both sides a corporation is not estopped to say in its defense that it had not the power to make the contract sought to be enforced, yet, when it becomes executed by the other party, it is estopped from asserting its own wrong, and cannot be excused from payment upon the plea that the contract was beyond its power." 172 N. Y. 518, 65 N. E. 498, 92 Am. St. Rep. 761. "It is now very well settled that a corporation cannot avail itself of the defense of ultra vires when the contract

has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract." Whitney Arms Co. v. Barlow, 63 N. Y. 62, 70, 20 Am. Rep. 504.

The contract which the plaintiff has pleaded, he certainly has fully executed. What the defendant sought to obtain under the contract, it has secured. Whether or not it availed itself of its privilege is, on the facts, no concern of the plaintiff. The plaintiff performed. He placed the stocks and bonds at the entire disposal of the defendant; he exercised no acts of ownership; he was ready to turn them over to the defendant on demand pursuant to his contract. He deprived himself of any opportunity to make other disposition of his holdings during the term. Even though the securities still remain in his hands as a result of the defendant's default, yet nevertheless the contract in relation to these securities has been as fully executed by the plaintiff as it was in his power to do. Being fully executed, it becomes immaterial whether the contract was ultra vires or not, under the authorities cited, unless, in addition to being ultra vires, it was either mala in se, mala prohibita, or against declared public policy. It needs no argument to show that it was not mala in se. The contract involves no moral turpitude. Nor does the contract, as pleaded, violate public policy. It cannot be said to be a wagering contract, which a corporation having banking or trust company powers should not be permitted, in law, to make. Is it mala prohibita? It is not mala prohibita in the sense now under discussion, under section 10 of the general corporation law (Laws 1892, p. 1804, c. 687), which declares that "no corporation shall possess or exercise any corporate powers not given by law." That is a mere general provision relating to ultra vires in its restricted and correct sense, violations of which may give the state a right to proceed against the corporation, or the stockholders and corporators the right to restrain the application of corporate funds to foreign purposes. It has no bearing on a suit brought by a private individual on an executed contract. But "a corporation cannot enter into or bind itself by a contract which is expressly prohibited by its charter or by statute, and, in the application of this principle, it is immaterial that the contract, except for the prohibition, would be lawful. No one is permitted to justify an act which the Legislature, within its constitutional power, has declared shall not be performed." Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 30, 31, 45 N. E. 390, 36 L. R. A. 664. Is the contract mala prohibita in this sense? The defendant invokes section 159 of the banking law (Laws 1892, p. 1911, c. 689), which provides as follows:

"The capital of every such corporation shall be invested in bonds and mortgages on unencumbered real property in this state, worth at least double the amount loaned thereon, or in the stocks or bonds of this state or of the United States, or of any county or incorporated city of this state duly authorized by law to be issued. The moneys received by any such corporation in trust may be invested in its discretion in the securities of the same kind in which its capital is required to be invested, or in the stock or bonds of any state of the United States, or in such real or personal securities as it may deem

proper. *No such corporation shall hold stock in any private corporation to an amount in excess of ten per cent. of the capital of the corporation holding such stock.*"

The italicized portion is the part of the statute particularly invoked by the defendant. I do not think this section makes the contract mala prohibita in the sense now under discussion. Its violation may give the same rights as violations under section 10 of the general corporation law, supra, but I do not take it to be that specific prohibition which renders a contract, executory or executed, unenforceable. See Taylor, Priv. Corp. (5th Ed.) § 301.

But beyond this, I am inclined to agree with the argument of the counsel for the plaintiff that nothing in the contract shows that the securities were intended by the parties to constitute part of the capital of the defendant, or that the defendant was intending, or that the plaintiff knew it was intending, to invest any trust funds in the stock of the United States Shipbuilding Company. Further, it nowhere appears what the capital of the defendant is, or what the plaintiff knew about it. On the pleaded facts, I am unable to say that the contract was in violation of any such specific statutory prohibition, under the authorities, or that the plaintiff was properly chargeable with the knowledge of any such specific vice or defect in the contract. The demurrer to this defense should be sustained.

The second defense, which pleads lack of authority in those who engaged to execute the contract in question on behalf of the defendant, is not attacked.

The third and fourth defenses, to each of which demurrers are interposed, may be conveniently considered together. The gist of these defenses is that the defendant denies that the plaintiff was the lawful owner of the securities set out in the complaint, by averring that they were fraudulently received by him, and that he did not have, and could not make, a marketable title. Substantially, these facts are set forth: The plaintiff was a director and a large or controlling stockholder in a Delaware corporation—the Harlan & Hollingsworth Company—and had full knowledge of its business, its contracts, its physical and financial condition. The entire stock and property of this company were sold to the United States Shipbuilding Company for a consideration consisting partly of cash and partly of securities of the shipbuilding company. The amount of cash and securities received by the plaintiff is set out, and it is then alleged that the plaintiff induced the payment of the cash and the issuance of the securities by false or fraudulent representations made, or authorized by him to be made, to the shipbuilding company. The alleged fraudulent representations are then set forth in detail, and it is thereupon averred that the securities "were fraudulently received by the plaintiff, and he did not have and could not make, a good or marketable title thereto." The fourth separate defense alleges, in addition, that, when the sale of the capital stock and property of the Harlan & Hollingsworth Company was made to the shipbuilding company, it was covenanted by the plaintiff that the former company should be free from debt, except current liabilities, and that its property should be free

of liens, except a certain stated amount, which was to be paid out of surplus earnings. It is alleged that when the sale was consummated the company was not free from debt; that the stated liens had not been paid out of surplus earnings, there being none; and that, by reason of the failure of the plaintiff to keep his covenants, he did not have, and could not make, a good and marketable title to the securities he placed at the disposal of the defendant. It is difficult to see how the matter pleaded in either of these defenses is sufficient in law. So far as the sale of the Harlan & Hollingsworth stock and property was concerned, no contract relation existed between the plaintiff and the defendant. So far as alleged in these defenses, no false representations were made to it; no covenants were entered into with it. The defenses necessarily rest solely on the allegations that, by reason of the premises, the plaintiff's title to the securities set forth in the complaint was fraudulent, unmarketable, and not good. But this is a mere conclusion of law, and, on the facts pleaded, constitutes no defense. The plaintiff's stocks whether obtained fraudulently or not, were marketable. His title may have been a defeasible title—that is the shipbuilding company might have rescinded; but, until that had been done, the plaintiff's title was good, so far as the defendant was concerned. His title to the securities was not void, but merely voidable at the election of the shipbuilding company. The defendant fails to show title in a third person, or ouster during the period that it was called upon to perform its contract, or that it has been compelled to pay the true owner the value of the securities. The defenses rest solely on a contingent defeasibility of title, which has not become actual. Under the authorities, the matter pleaded does not constitute a defense (McGiffin v. Baird, 62 N. Y. 329; O'Brien v. Jones, 91 N. Y. 193; Akin v. Meeker, 78 Hun, 387, 29 N. Y. Supp. 132), and each of the demurrers must be sustained.

The fifth separate defense, repeating the allegations of the two previous defenses, alleges that when the contract in suit was executed the plaintiff represented that the preferred and common stocks of the shipbuilding company were full-paid and nonassessable, when in fact, and to his knowledge, on account of the misrepresentations and unkept covenants set forth in the prior defenses, the stocks were liable to further assessments in the hands of the holders. Waiving the defect in the plea of the false representations (Lefler v. Field, 52 N. Y. 621), I am of the opinion that it does not appear that the representation was false. The allegation that the stock is not full-paid is not made as an allegation of fact, but as a conclusion of law, deducible from the facts set out in the third and fourth defenses. It is averred that the stocks were not full-paid, and that the holder "was liable for further assessments * * * by reason of the allegations in the foregoing third and fourth defenses of the defendant." Obviously, if there is nothing in these defenses to show the representation false, i. e., that the stocks were not full-paid, the fifth defense is bad. The third and fourth defenses state that the United States Shipbuilding Company is a New Jersey corporation, but nowhere is the

New Jersey statute set forth under which the stocks in question would be declared to be not fully paid, and therefore assessable. Whether or not the stocks are subject to further assessment is determinable by the laws of the domicile of the corporation. These laws do not appear. On the trial an offer of proof of the laws would be properly met by the objection that they had not been pleaded, and the proof would, in the absence of amendment, have to be excluded. The point being now raised on demurrer must be held equally good. I am therefore of the opinion that this demurrer should be likewise sustained.

I come now to the counterclaim. · Here the defendant alleges that the plaintiff was a large or controlling stockholder and a director in the Harlan & Hollingsworth Company, with full knowledge of its business, property, and financial condition. On June 17, 1902, the plaintiff, with the other stockholders of the Harlan & Hollingsworth Company, entered into an agreement "to sell to one Lewis Nixon or to one John W. Young or to some other person or to some firm or corporation" all the property and capital stock of the Harlan & Hollingsworth Company for the consideration of $800,000 cash, $500,000 of the bonds, and $400,000 each of the preferred and common stocks of the United States Shipbuilding Company; the intention being to convey all the said property and capital stock to the United States Shipbuilding Company. Pursuant to that agreement, the property and capital stock of the Harlan & Hollingsworth Company were conveyed and assigned to the United States Shipbuilding Company, and the consideration paid to the stockholders of the Harlan & Hollingsworth Company, of which consideration the plaintiff received in cash $384,000, and $240,000 of the bonds and $191,600 each of the preferred and common stocks of the United States Shipbuilding Company. "In order to secure the payment of said sum of eight hundred thousand dollars to the stockholders of the Harlan and Hollingsworth Company, the plaintiff made or authorized or caused to be made to the defendant false representations" as to the Harlan & Hollingsworth Company; being the same representations as are recited in the third separate defense. These representations were known by the plaintiff to be false, and made with intent to influence the defendant. The defendant, believing them to be true, and relying thereon, "and for the purpose of assisting the said Lewis Nixon or John W. Young and the said United States Shipbuilding Company to carry out the agreement, * * * paid to the plaintiff" and the other stockholders of the Harlan & Hollingsworth Company "the sum of eight hundred thousand dollars, * * * which said sum, * * * by reason of the false representations of the plaintiff hereinbefore recited, has been wholly lost to the defendant." The plaintiff claims that the counterclaim fails to state a cause of action, and that, even if it does, it is not within section 501 of the Code of Civil Procedure. While I am of the opinion that the latter objection is unsound (Siebrecht v. Siegel-Cooper Co., 38 App. Div. 549, 56 N. Y. Supp. 425; Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726), I must hold that, in its present form, the counterclaim fails to state a cause

of action.   Reduced to lowest terms, the defendant alleges a consummated contract between the plaintiff and others and Nixon or others by which the Harlan & Hollingsworth properties were to be sold.   In order to induce the defendant to advance the cash part of the consideration for the plaintiff's contract with Nixon or others, the plaintiff made false representations to the defendant, which, relying thereon, paid out the cash to assist Nixon, or the others, with the result that the money was "wholly lost."   The vice here is that it does not appear how the money was wholly lost.   The plaintiff made no contract with the defendant.   The latter's claim is purely for a tort.   Being an action for tort—for deceit, to be more specific—there must be facts from which the reasonable inference is deducible that the $800,000 was wholly lost to the defendant.   Nothing in the facts shows this loss.   The defendant may have ample security from Nixon or the others.   The contract which is made to assist Nixon or the others may be still in force.   The mere fact that advances were made to a third party on the plaintiff's false representations does not per se establish loss in any amount to the defendant.   What was the undertaking of the third party in return for the advances made to him?   Did he not obligate himself to make repayment to the defendant?   If he did, has the debt matured, or has the security proved inadequate?   What is there on the face of the answer to show loss, except the statement of a legal conclusion?   A different question would be presented, had there been a contract relation between the parties to this suit.   But the defendant's cause of action sounds solely in tort.   While he may waive the tort and sue in assumpsit, so as to make this a pleadable counterclaim, yet the foundation of his action against the plaintiff remains the deceit; and, so far as that cause of action is concerned, the defendant fails to show by proper facts that it has sustained damage or injury.   I am therefore of the opinion that each demurrer is well taken, and that each should be sustained.   Leave will be given to plead over on payment of costs.

Demurrers sustained; leave to plead over on payment of costs.