THE FIDELITY INSURANCE COMPANY, Appellant, v. THE
GERMAN SAVINGS BANK.

**Corporations:** PURCHASE OF BANK STOCK: RATIFICATION. Where
1 the president and secretary of a corporation without previous
authority accepted bank stock and certificates of deposit in part
payment of an indebtedness due it, and the directors with
knowledge of the arrangement subsequently treated the stock
as a portion of the company's assets and collected the cer-
tificates of deposit, the act of such officers was thereby ratified.

**Unauthorized act of officers:** REPUDIATION. Where the officers of
2 an insurance company accepted bank stock and certificates of
deposit in payment of a claim against an insolvent bank, and
the company received and retained the benefits arising there-
from, it cannot repudiate the transaction without offering to
put the other party in *statu quo* by a return of the property.

**Ultra vires.** A corporation which has received the benefits of an
3 executed contract cannot repudiate the transaction on the
ground that it was *ultra vires*.

**Same.** Although a transaction of a corporation may not be strictly
4 within its grant of power, yet if made to save the corporation
from loss the plea of *ultra vires* will not avail, where the
agreement has been carried out and is not expressly prohib-
ited or contrary to public policy.

**Same.** Although Code, section 1699, does not authorize an insur-
5 ance company to invest its funds in the purchase of bank stock,
yet such investment is not expressly prohibited thereby and

the act of the company in purchasing such stock to avoid financial loss is not in violation of the statute to the extent that it may claim the act to have been *ultra vires,* after having received the benefit of the transaction.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, JUNE 10, 1905.

ACTION in equity, originally brought by plaintiff and others, claiming to be depositors in the defendant bank, for the appointment of a receiver on the ground that the bank had not sufficient funds to pay its depositors, and to recover judgment against the bank for the amount of plaintiffs' respective deposits, and for an accounting, etc. Application was made for a temporary receiver, but was refused. Afterwards, in behalf of the insurance company, the action was continued as an action to recover a deposit of $5,000, which deposit it was alleged the defendent failed and refused to pay. After a hearing on the merits, the plaintiff's petition was dismissed, and judgment was rendered in favor of defendent for costs. Plaintiff appeals.—*Affirmed.*

*Edmund H. McVey* and *John G. Park,* for appellant.

*Dale & Harvison,* for appellee.

McCLAIN, J.— The facts essential to be considered in determining whether the lower court reached a proper conclusion in this case are as follows: In 1897 the plaintiff had on deposit in a bank of the same name as this defendant, and to which this defendant became successor, the sum of $8,244. On January 21st of that year said bank was placed in the hands of a receiver under allegations that it was insolvent. Subsequently the bank was reorganized by the incorporation of this defendant with a capital stock of

$100,000, its predecessor having had a capital of only $50,-
000.   Of this capital stock of the reorganized bank $50,000
was subscribed by stockholders and $50,000 by the holders
of deposits in the old bank, the reorganization being carried
out in accordance with the plan proposed by a committee of
stockholders and creditors.   In pursuance of the plan of re-
organization one Cooper, as president of the plaintiff com-
pany, and one Moore, as its secretary, without authority from
its board of directors, subscribed for $5,000 of stock in the
reorganized bank, to be paid out of the company's deposit
in the old bank, and accepted certificates of deposit, payable
at intervals, for $3,244, the balance of the company's deposit.
This action on the part of the president and secretary was
never formally approved, but the directors had knowledge
of the transaction, the certificate was scheduled among the
assets of the company and reported among its assets for
three successive years to the auditor of state, and the certifi-
cates of deposit were held and collected for the benefit of
plaintiff by its officers.   The disposal of the certificate of
stock in the defendant bank was considered at directors'
meetings, but no disposition of it was made until in Novem-
ber, 1898, when, in pursuance of an order from the auditor
of state, the directors of the defendant bank made an assess-
ment of forty per cent. on its stockholders to cover an impair-
ment of its capital by losses in business.   On the failure of
the plaintiff company to pay this stock assessment the stock
held by it in the defendant bank was sold for the amount of
the assessment, and became the property of other parties.
The plaintiff company now seeks to repudiate the transaction
by which $5,000 in stock of the defendant bank was accepted
by its president and secretary in lieu of a corresponding
amount of its deposit in the old bank on the ground that the
action of its officers was without authority, and that as a
transaction on the part of the plaintiff as a corporation it
was *ultra vires,* and to recover from the defendant bank the

amount of the deposit in lieu of which the shares of capital stock in the reorganized bank were accepted.

I.    It is immaterial, in our judgment, whether or not Cooper and Moore, as president and secretary of the plaintiff company, had any authority to enter into the transaction by which stock in the defendant bank was issued to the plaintiff in lieu of a corresponding amount of plaintiff's deposit in the old bank.

1. CORPORATIONS: purchase of bank stock; ratification.

The stock was treated by the directors as belonging to the company, and the balance of the deposit was paid to the company in pursuance of the arrangement by which the new bank was organized. Certainly it is too late now for the plaintiff to claim that its officers acted without authority. There is no pretense that the terms of the arrangement under which the stock was issued to the plaintiff were not fully known to the directors of the company when they treated this stock as a portion of the company's assets and collected the certificates of deposit issued to the plaintiff in pursuance of the reorganization. The board of directors of the plaintiff, by ratification, gave to the action of the president and secretary all the authority in the premises which could have been given by a previous express authorization.

II.    If plaintiff's board of directors desired to rescind the transaction in pursuance of which the certificate of stock and certificates of deposit for the balance of plaintiff's deposit in the old bank were issued and delivered to the plaintiff, they should plainly have offered to return the certificate to the defendant bank, and thus place the defendant in *statu quo,* if possible; and at any rate should have refrained from appropriating to plaintiff's benefit the shares of stock and the amount of the deposit. The plaintiff company, through its board of directors, having taken advantage of all the benefits of the transaction, cannot now be permitted to repudiate it, and assert as against the defendant a claim for the amount of its deposit in the old bank. Counsel argue that plaintiff has received no ad-

2. UNAUTHORIZED ACT OF OFFICERS: repudiation.

vantage and the defendant bank has suffered no detriment by reason of the arrangement between plaintiff and defendant. But plaintiff certainly has presumptively derived a benefit from the transaction, for in lieu of a claim for $8,244 of deposits in an insolvent corporation it has received from the defendant $3,224 in cash and stock of the face value of $5,000.   It is argued that plaintiff was absolutely secure as to its deposit in the old bank by reason of the liability of the stockholders of that bank to assessment in an amount equal to the stock held by him, but it does not appear what the other liabilities of the old bank were, nor whether assessments on its stockholders could have been collected.   The bank was in the hands of a receiver on account of insolvency, and it was entirely problematical whether or not the depositors, even after the termination of extended litigation, would recover the full amount of their deposits.   Nor, on the other hand, can it be said that the defendant bank will not be prejudiced by the repudiation of the arrangement between it and the plaintiff company.   A certificate of shares of stock in the defendant of the face value of $5,000, constituting a liability of the defendant, which was originally issued to the plaintiff, still remains outstanding, and if the defendant is compelled to pay $5,000 to the plaintiff without the return of this stock the defendant bank will be the loser to that extent.   As the defendant bank continues to do business under the authority of the auditor of state, we are justified in presuming that these shares of stock are now substantially worth their face value since the payment by the purchaser of the forty per cent. assessment, and the defendant would certainly, therefore, be damaged to the extent of at least 60 per cent. of the face value of the stock if it should now be compelled to pay to the plaintiff the $5,000 for which the stock was originally issued.   We cannot see, therefore, any equity in the attempt of the plaintiff to rescind the transaction and recover from the defendant the balance of its deposit in the old bank.

III. Counsel for appellant take the broad ground, however, that the acquisition of this stock by the plaintiff company in the defendant bank was *ultra vires,* and there-

3. ULTRA VIRES.        fore illegal and void, and that plaintiff may entirely disregard it, and recover from the defendant the balance of plaintiff's deposit in the old bank; and we shall proceed to consider the soundness of this contention. It is claimed that the act of the plaintiff company in acquiring stock in the defendant bank was *ultra vires,* because it was outside of the scope of the plaintiff's business as an insurance company, and prohibited by statute. As to the claim that this acquisition of stock was outside of the general scope of plaintiff's business, it is sufficient to say, first, that a corporation cannot repudiate an executed contract of which it has received the benefit on the ground that such contract is *ultra vires;* that is, not within the scope of the business which it is authorized to transact. *Hitchcock v. Galveston,* 96 U. S. 341 (24 L. Ed. 659); *National Bank v. Matthews,* 98 U. S. 621 (25 L. Ed. 188); *Central Transp. Co. v. Pullman's Car Co.,* 139 U. S. 24, 60 (11 Sup. Ct. 478, 35 L. Ed. 55); *Richmond Guano Co. v. Farmers' Cotton Seed, etc., Co.,* 126 Fed. 712 (61 C. C. A. 630); *De Groff v. American Linen Thread Co.,* 21 N. Y. 124; *Vought v. Eastern B. & L. Ass'n,* 172 N. Y. 508, 517, (92 Am. St. Rep. 761); *Whitney Arms Co. v. Barlow,* 63 N. Y. 62, 70 (20 Am. Rep. 504); *Gause v. Commonwealth Trust Co.,* 89 N. Y. Supp. 723; *Bradley v. Ballard,* 55 Ill. 413 (8 Am. Rep. 656); *Tootle v. First Nat. Bank,* 6 Wash. 181 (33 Pac. 345); *Magee v. Pac. Improv. Co.,* 98 Cal. 678 (33 Pac. 772, 35 Am. St. Rep. 199); *Trustees v. Piedmont Realty Co.,* 134 N. C. 41 (46 S. E. 723); *Schrimplin v. Farmers' Life Ass'n,* 123 Iowa, 103. Many other cases might be cited in support of this general proposition, but it is so universally recognized that at this time the mere statement of it is sufficient.

In the second place, although the act of plaintiff in ac-

quiring stock in the defendant bank was outside of the general scope of its business, nevertheless the acquisition of such

4. SAME.    stock for the purpose of securing itself against loss on account of the insolvency of the bank in which it had a deposit was fully authorized.    In speaking of a transaction by which a bank acquired property on a claim against a debtor, this court, in *Rosenbaum v. Horton*, 89 Iowa, 692, used the following language:

> The transaction was not a usual one with the bank, but was necessary for it to secure its claim and the claim of the machine company.    It does not require any argument to show that the bank was authorized to secure itself against loss by taking the property in question, and that it had the right to ship it to Chicago for sale, even though such a proceeding was not within the ordinary scope of its business, and was unusual.    If it be claimed that the transaction was so unusual that the plaintiff, in the exercise of ordinary caution, should have inquired in regard to it, the answer is that, if such inquiry had been made, it would have disclosed the fact that the flax seed and oats were properly taken in the transaction of the ordinary business of the bank.

In *First Nat. Bank v. Reno,* 73 Iowa, 145, it was held that, although a national bank has no authority under its charter to engage generally in the business of buying and selling personal property, nevertheless such a bank may, under certain circumstances, acquire and dispose of such property in the course of its business when necessary to secure itself against loss.    So it was held in *Security Nat. Bank v. St. Croix Power Co.,* 117 Wis. 211 (94 N. W. 74), that a national bank acquiring in the course of its business a subcontractor's lien might proceed to complete the work in order to preserve its lien.    And even the Supreme Court of the United States, which holds that it is beyond the power of a national bank to acquire stock in another bank as an investment, holds also that such a bank may lawfully acquire such stock in the course of business to protect itself from loss.    *National Bank v. Case,* 99 U. S. 628 (25 L. Ed.

448); *First Nat. Bank v. National Exch. Bank,* 92 U. S. 122 (23 L. Ed. 679). So far, then, as plaintiff's contention that the acquisition of stock in the defendant bank was *ultra vires* is founded on the general proposition that the purchase of stock in a banking corporation was not within the scope of the business for which plaintiff was incorporated, we think it is entirely without merit, in view of the fact that the transaction was entered into for the purpose of protecting itself against loss, and has been fully completed. A corporation cannot rely upon the doctrine of *ultra vires* to relieve itself from the consequence of a contract made by it which is fully executed by the other party, and which is not expressly prohibited, or contrary to public policy. The recent decisions on this subject almost, if not quite, unanimously support this general proposition. See cases cited 10 Cyc. 1068, 1156–1167, and additional cases in supplemental volume for 1904. See, also, cases cited in 3 Current Law, 889. When the plea of *ultra vires* is founded solely on lack of power granted to the corporation to do the act in question, the following rule, stated in *Security Nat. Bank v. St. Croix Power Co., supra,* is undoubtedly supported by the great weight of authority: "When a corporation enters into business relations not authorized by a corporate grant of power, the doctrine of *ultra vires* cannot be used by it nor by the person with whom it assumes to deal as a means of defeating the obligations assumed. The State alone can take advantage of the abuse."

IV. There are, however, authorities supporting the proposition which is further relied on in behalf of appellant that an attempted exercise of power expressly prohibited to a 5. SAME. corporation is void, and that the corporation is not estopped to take advantage of the plea of *ultra vires* in such a case, although it has received the benefit of the prohibited transaction. The principal case relied on is that of *California Bank v. Kennedy,* 167 U. S. 362 (17 Sup. Ct. 831, 42 L. Ed. 198); see, also, *Concord First Nat.*

*Bank v. Hawkins,* 174 U. S. 364 (19 Sup. Ct. 739, 43 L. Ed. 1007); *Schofield v. Goodrich Bkg. Co.,* 98 Fed. 271 (39 C. C. A. 76); *Burrows v. Niblack,* 84 Fed. 111 (28 C. C. A. 130); in which it is held that the statutes of the United States prohibit national banks from purchasing or subscribing to the stock of other corporations, and, further, that such a bank cannot, by acquiring stock in another bank, not in the course of its usual and lawful business, become liable as a stockholder in such a bank, and may rely upon the doctrine of *ultra vires,* notwithstanding it has received dividends on such stock.   It seems to be assumed in this case that the act of the national bank was contrary to law, and not simply outside of the general scope of its powers; but we think such a distinction is not well taken.   It is undoubtedly true that, where a statute specifically prohibits the doing of an act by a corporation, neither the corporation nor the person dealing with it will be allowed to rely on such transaction, or assert any benefits that grow out of it.   *Pennypacker v. Capital Ins. Co.,* 80 Iowa, 56.   *In re Assignment Mut. Guaranty Ins. Co. v. Barker,* 107 Iowa, 143.   But the fact that a transaction is wholly unauthorized by the law empowering the corporation to do business, or by the terms of the charter of such corporation, or that it is contrary to general restrictions as to the scope of the corporate power, will not render it so far void as that the corporation may not be estopped by receiving the benefits of the transaction from relying on the doctrine of *ultra vires.*   *Pennypacker v. Capital Ins. Co., supra; First Nat. Bank v. Haire,* 36 Iowa, 443; *Hunt v. Hauser Malting Co.,* 90 Minn. 282 (96 N. W. 85); *Security Nat. Bank v. St. Croix Power Co.,* 117 Wis. 211 (94 N. W. 74).   The Minnesota and Wisconsin cases just cited disapprove of the case of *California Bank v. Kennedy,* and it is pointed out that, whatever may be the rule established by the Supreme Court of the United States with reference to the liability of a national bank as a holder of stock in another

bank, the decisions of that court are not binding on the State courts in applying the general doctrine of *ultra vires*.

Without discussing all the cases which have been .cited on either side of the proposition which we are now considering — a task more onerous than profitable — in the effort to reach a correct conclusion, we are satisfied that the rule supported by the great weight of authority is that, unless the transaction is so specifically prohibited that it is contrary to law, or is so manifestly against public policy that it is to be deemed prohibited without express declaration, a corporation is estopped, after receiving the benefit of a transaction, from saying that it is totally void, even though it is contrary to the general provisions of statute as to the method in which the business is to be conducted. With reference, then, to the particular case before us, we are to ascertain to what extent the plaintiff violated the statute regulating the method of doing its business in acquiring stock in the defendant bank. It is provided in Code, section 1699, that a fire insurance company, such as the plaintiff, may invest its capital and funds in various ways specified, " and not otherwise, except that the surplus funds may be invested in or loaned upon the pledge of stock or bonds or other evidences of indebtedness of any solvent dividend paying corporation, organized under the laws of the State or of the United States, worth at their current market value ten per cent. more than the amount at which they are estimated in determining the assets of the company." It may be conceded that the plaintiff did not have authority, under this section, to invest its surplus funds in the stock of defendant bank, but there is no provision in the statute declaring such investment to be an unlawful act or specifically prohibiting it. As between the State and the corporation such an investment might well be regarded as unauthorized; but it does not follow that it is so far prohibited and unlawful that the plaintiff, having received the benefit of the transaction, can disaffirm it on the ground that it is *ultra vires*, and, without placing the defendant in *statu*

*quo,* insist on a return to it of the money thus invested. Can it be contended for a moment that every use of the money of the plaintiff corporation not expressly authorized by this section is a prohibited transaction, and absolutely void? Can it be said that the original deposit by the plaintiff of $8,244 of its funds in the old bank was *ultra vires* and void? If so, then the old bank might have pleaded *ultra vires* as against the corporation making the deposit and escaped liability therefor. Any such doctrine would be intolerable. We reach the conclusion that, as between the plaintiff and the defendant bank, the acquisition of stock by the former in the latter, not as an original investment of funds, but as an emergency transaction incidental to the conduct of its business, and for the purpose of securing it from loss, was valid and binding on the plaintiff, and cannot now be disaffirmed.

We therefore hold that the trial court correctly refused to render judgment against the defendant in favor of the plaintiff for the $5,000 of its deposit in the old bank for which it accepted stock in the defendant bank, and the judgment is *affirmed*.